EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
JONATHAN L. WOLFF
Supervising Deputy Attorney General
SCOTT J. FEUDALE, State Bar No. 242671
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5871
  Fax: (415) 703-5843
  Email: Scott.Feudale@doj.ca.gov

Attorneys for Defendant M.S. Evans[1/]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **LARRY DEAN PADILLA,**<br><br>                       Plaintiff,<br><br>       v.<br><br>**M. S. EVANS,**<br><br>                    Defendants. | CASE NO. C 06-1725 JF |

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**

**MEMORANDUM OF POINTS AND AUTHORITIES**

---

    1. To the best knowledge of the Attorney General's Office Defendant Mantel has not been served with summons in this case. Accordingly, no appearance is entered on her behalf at this time.

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES    2

INTRODUCTION    2

STATEMENT OF THE ISSUES    2

PROCEDURAL HISTORY    3

STATEMENT OF FACTS    4

    A.   Plaintiff's Background.    4

    B.   Housing Facilities at SVSP.    5

    C.   Recreation Afforded Inmates at SVSP.    6

    D.   Exercise Opportunities Afforded Plaintiff During the Month of January 2005.    8

LEGAL STANDARD    8

ARGUMENT    9

    I.   DEFENDANT DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT BY AFFORDING HIM ADEQUATE OPPORTUNITIES TO EXERCISE OUTSIDE OF HIS CELL DURING THE MONTH OF JANUARY 2005.    9

        A.   The Deprivation of Outdoor Exercise Plaintiff Alleges Was Not Sufficiently Serious.    9

        B.   Defendant Did Not Act with Deliberate Indifference in Providing Plaintiff with Numerous Opportunities to Exercise During the Month of January 2005.    12

    II.   DEFENDANT DID NOT VIOLATE PLAINTIFF'S RIGHT TO EQUAL PROTECTION BECAUSE PLAINTIFF WAS NOT TREATED DIFFERENTLY THAN OTHER SIMILARLY SITUATED INMATES, DEFENDANT LACKED DISCRIMINATORY INTENT, AND DEFENDANT HAD A RATIONAL BASIS FOR IMPLEMENTING A ROTATIONAL EXERCISE SCHEDULE.    14

        A.   Plaintiff Was Not Similarly Situated to Inmates Housed Within the General Population.    14

        B.   Plaintiff is Not a Member of a Protected Class, Nor Did Defendant Act With Discriminatory Intent in Implementing a Rotational Exercise Schedule.    15

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.

*Padilla v. Evans*
C 06-1725 JF

i

**TABLE OF CONTENTS  (continued)**

Page

C.   Defendant's Decision to Implement a Rotational Recreational Schedule
Was Rationally Related to a Legitimate State Objective.     17

III.  DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.     18

CONCLUSION     21

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.

*Padilla v. Evans*
C 06-1725 JF

ii

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Allen v. Sakai*, 48 F.3d 1082 (9th Cir. 199                                 10, 12, 20

5

*Anderson v. Liberty Lobby, Inc*
6  477 U.S. 242 (1986)                                                          8, 9

7  *Barren v. Harrington*
   152 F.3d 1193 (9th Cir. 1998)                                              14, 15
8

   *Bell v. Wolfish*
9  441 U.S. 520 (1979)                                                        12, 13

10 *Berg v. Kincheloe*
   794 F.2d 457 (9th Cir. 1986)                                              12, 13
11

   *Burns v. Reed*
12 500 U.S. 478 (1991)                                                           19

13 *Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)                                                            8
14

   *City of Cleburne v. Cleburne Living Center*
15 473 U.S. 432 (1985)                                                           14

16 *Cleburne Living Center*
   473 U.S. 439-42                                                           14, 17
17

   *Coakley v. Murphy*
18 884 F.2d 1218 (9th Cir. 1989)                                             14, 17

19 *Farmer v. Brennan*
   511 U.S. 825 (1994)                                                           12
20

   *Fraley v. United States Bureau of Prisons*
21 1 F.3d 924 (9th Cir. 1993)                                                    14

22 *Granville v. Plummer*
   Case No. C 97-3513 MHP, 1999 WL 66513 at *12 (N.D. Cal. Feb. 9, 1999)    15, 17
23

   *Gutierrez v. Mun. Court of the Se. Judicial Dist.*
24 838 F.2d 1031 (9th Cir. 1988)                                                 15

25 *Harlow v. Fitzgerald*
   457 U.S. 800 (1982)                                                           19
26

   *Hayward v. Procunier*
27 629 F.2d 599 (9th Cir. 1980)                                              10, 12, 20

28

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
                                                                  C 06-1725 JF

iii

## TABLE OF AUTHORITIES  (continued)

Page

*Hewitt v. Helms*
459 U.S. 460 (1983)                                                                          9

*Hudson v. Palmer*
468 U.S. 517 (1984)                                                                          12

*LeMaire v. Maass*
12 F.3d 1444 (9th Cir. 1993)                                                      10, 12, 20

*Lee v. City of Los Angeles*
205 F.3d 668 (9th Cir. 2001)                                                               16

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000)                                                              10

*Marchesani v. McCune*
531 F.2d 459 (10th Cir. 1976)                                                              13

*Massachusetts Bd. Ret. v. Murgia*
427 U.S. 307 (1976)                                                                         16

*May v. Baldwin*
109 F.3d 557 (9th Cir. 1997)                                                               10

*Mitchell v. Forsyth,*
472 U.S. 511 (1985)                                                                         19

*Montano v. Galaza*
No. CV F-03-5891 AWI DLB I, 2007 WL 1840370 at *2 (E.D. Cal. June 27, 2007)                 14

*Moreland v. United States*
968 F.2d 655 (8th Cir. 1992)                                                               17

*Personnel Adm'r of Massachusetts v. Feeney*
442 U.S. 256 (1979)                                                                        16

*Rhodes v. Chapman*
452 U.S. 337 (1981)                                                                          9

*Saucier v. Katz*
533 U.S. 194 (2001)                                                                        19

*Scott v. Harris*
127 S. Ct. 1769 (2007)                                                                       9

*Spain v. Procunier*
600 F.2d 189 (9th Cir. 1979)                                                     9, 11, 12, 20

*Thornton v. City of St. Helens*
425 F.3d 1158 (9th Cir. 2005)                                                          14, 17

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                        *Padilla v. Evans*
                                                                          C 06-1725 JF

iv

## TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *Toussaint v. Yockey*<br>722 F.2d 1490 (9th Cir. 1984) | 10, 11, 20 |
| *Wilson v. Seiter*<br>501 U.S. 294 (1991) | 9, 12 |

**Constitutional Provisions**

| | |
|---|---|
| United States Constitution | |
|     Eighth Amendment | 2, 3, 4, 9-13, 20, 21 |
|     Fourteenth Amendment | 2-4, 14, 21 |

**Statutes**

| | |
|---|---|
| United States Code, Title 42 | |
|     § 1983 | 14, 15 |
| United States Code, Title 28 | |
|     § 1915A | 3 |

**Court Rules**

| | |
|---|---|
| Federal Rules of Civil Procedure | |
|     Rule 56 | 1, 4 |
|     Rule 56(c) | 8 |
|     Rule 56(e) | 8 |

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.

*Padilla v. Evans*<br>C 06-1725 JF

v

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  SCOTT J. FEUDALE, State Bar No. 242671
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5871
    Fax:  (415) 703-5843
8   Email:  Scott.Feudale@doj.ca.gov

9  Attorneys for Defendant M.S. Evans[1/]

10

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISION

14

| | |
|---|---|
| **LARRY DEAN PADILLA,** | CASE NO. C 06-1725 JF |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **M. S. EVANS,** | |
| Defendants. | |

20  TO PLAINTIFF LARRY PADILLA, IN PRO PER:

21     PLEASE TAKE NOTICE that under Rule 56 of the Federal Rules of Civil Procedure,

22  Defendant M.S. Evans (Defendant) moves this Court for summary judgment on the grounds that

23  because there is no genuine issue as to any material fact, he is entitled to judgment as a matter of

24  law, and he is entitled to qualified immunity.

25     The summary-judgment motion is based upon this notice of motion and motion, the

26

27  ———————————————————————

28     1. To the best knowledge of the Attorney General's Office Defendant Mantel has not been
   served with summons in this case. Accordingly, no appearance is entered on her behalf at this time.

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
                                                                   C 06-1725 JF

1

1  memorandum of points and authorities, the supporting declarations and attached exhibits, this

2  Court's file, the proposed order, and any matters properly before this Court.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **INTRODUCTION**

5      Plaintiff, a prisoner under the custody of the California Department of Corrections and

6  Rehabilitation alleges that Defendant M.S. Evans, the warden of Salinas Valley State Prison

7  (SVSP), Defendant violated his Eighth Amendment right to be free from cruel and unusual

8  punishment by failing to provide him with a sufficient amount of outdoor exercise from January

9  1, 2005 until January 26, 2005. (Pl.'s 1st Am. Compl. 3.) Plaintiff also alleges that Defendant

10 violated his equal protection rights under the Fourteenth Amendment by failing to provide him, a

11 "sensitive needs" inmate, with the same amount of outdoor exercise as provided to those inmates

12 housed within the general population. (*Id.* at 4.)[2]

13     Contrary to Plaintiff's assertions and as the evidence shows, Plaintiff's Eighth Amendment

14 right was not violated as he was afforded the opportunity to exercise for approximately forty-five

15 hours during the month of January 2005, including seventeen hours of outdoor exercise. In

16 addition, Plaintiff's equal protection claim fails because he has not shown that he was treated

17 differently from other similarly situated inmates, that Defendant's actions were motivated by

18 discriminatory intent, or that Defendant's outdoor exercise policy was not rationally related to a

19 legitimate state interest. Accordingly, summary judgment should be granted in Defendant's

20 favor. Moreover, because Defendant did not violate Plaintiff's clearly established constitutional

21 rights, he is entitled to qualified immunity.

22 **STATEMENT OF THE ISSUES**

23     1. Under the Eighth Amendment an inmate is entitled to some form of regular outdoor

24 exercise, unless prison conditions justify a temporary suspension of exercise privileges. Between

25

---

26     2. Plaintiff's First Amended Complaint also alleged that Defendant failed to provide him
with sufficient outdoor exercise from January 27, 2005 through January 25, 2007, and that Defendant

27 denied him equal access to various prison programs. However, these claims were dismissed on
November 27, 2007 due to Plaintiff's failure to exhaust his administrative remedies with respect to

28 these claims before filing suit.

*Padilla v. Evans*
C 06-1725 JF

1   January 1, 2005 and January 26, 2005, SVSP was operating on a rotational exercise schedule due

2   to prison overcrowding and staffing shortages.  Nevertheless, Plaintiff was afforded

3   approximately 45 hours of out-of-cell exercise, including 17 hours of outdoor exercise during

4   this time period.  Has Plaintiff suffered a constitutional deprivation?

5       2.  The Equal Protection clause requires that all similarly situated people be treated alike, a

6   showing of discriminatory animus, and a rational basis for state action.  In an effort ensure

7   institutional security while at the same time ensuring that every inmate was afforded an equal

8   opportunity to exercise, Defendant implemented a rotational exercise schedule.  Under this

9   schedule, Plaintiff was afforded the same opportunities to exercise as other "sensitive needs"

10  inmates.  Were Plaintiff's equal protection rights violated?

11      3.  Government officials are entitled to immunity from suit if their conduct does not violate

12  a constitutional right and if that right was not clearly established.  In January 2005, it was

13  constitutional to temporarily deny inmates outdoor exercise to ensure institutional security and to

14  treat all similarly situated inmates alike.  In January 2005, Defendant placed SVSP on a

15  rotational exercise schedule due to prison overcrowding and staff shortages.  Is Defendant

16  entitled to qualified immunity?

17                          **PROCEDURAL HISTORY**

18      On March 7, 2006, Plaintiff, a California state prisoner, filed a complaint pro se in the

19  Unites States District Court, Northern District of California.  (Ct. Docket #1.)  In his original

20  Complaint, Plaintiff alleged that Defendant did not afford him adequate outdoor exercise from

21  January 1, 2005 until the date of the filing of his Complaint.  (*Id.*)  On May 31, 2006, the Court

22  screened Plaintiff's Complaint under 28 U.S.C. § 1915A and found Plaintiff's outdoor exercise

23  claim to be cognizable under the Eighth Amendment.  (Ct. Docket # 5.)

24      On January 29, 2007, Plaintiff filed an amended complaint.  (Ct. Docket # 59.)  In his First

25  Amended Complaint, Plaintiff alleged that Defendant violated his Eighth Amendment right to

26  outdoor exercise from January 1, 2005 until January 25, 2007 and his Fourteenth Amendment

27  right to equal protection for the same time period.  (Pl.'s 1st Am. Compl. 3-4.)  On March 16,

28  2007, the Court screened Plaintiff's First Amended Complaint and found cognizable Plaintiff's

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                          *Padilla v. Evans*
                                                                        C 06-1725 JF

1   Eighth Amendment outdoor exercise claim and Plaintiff's Fourteenth Amendment equal

2   protection claim. (Ct. Docket # 69.) On June 13, 2007, Defendant filed a motion to dismiss

3   arguing that all of Plaintiff's claims, except for those alleging the denial of outdoor exercise from

4   January 1, 2005 through January 26, 2005, must be dismissed due to Plaintiff's failure to exhaust

5   his administrative remedies with respect these claims before filing suit. (Def.'s Mot. Dismiss 6-

6   9.)

7        In its Order dated November 27, 2007, the Court granted Defendant's motion in part and

8   denied it in part, dismissing without prejudice all of Plaintiff's Eighth Amendment claims

9   alleging inadequate outdoor exercise from January 27, 2005 until the present and dismissing

10  Plaintiff's equal protection claim alleging unequal access to outdoor exercise for the same time

11  period. (Order Granting Def.'s Mot. Dismiss in Part 2-9.) In the same order, the Court also

12  dismissed without prejudice Plaintiff's equal protection claims alleging unequal access to

13  recreational programs, therapy programs, religious services, and educational classes. (*Id.*)

14  However, the Court held that Plaintiff properly exhausted his Eighth Amendment claim of

15  inadequate outdoor exercise and his Fourteenth Amendment claim of unequal access to outdoor

16  exercise from January 1, 2005 until January 26, 2005, and allowed these claims to go forward.

17  (*Id.* at 6, 9.)

18       Defendant now moves for judgment on the remaining claims under Federal Rule of Civil

19  Procedure 56 because there is no genuine issue as to any material fact with respect to these

20  claims and therefore Defendant is entitled to judgment as a matter of law. Defendant also moves

21  for summary judgment because he is entitled to qualified immunity.

22                              **STATEMENT OF FACTS**

23  **A.   Plaintiff's Background**.

24       1.   Plaintiff is a California State prisoner currently incarcerated at Salinas Valley State

25  Prison (SVSP), serving a life sentence with the possibility of parole on one count of second

26  degree murder. (Decl. S. Feudale Supp. Def.'s Mot. Summ. J. (Decl. Feudale), Ex. B.)

27       2.   From January 1, 2005 through January 26, 2005, Plaintiff, a "sensitive needs" inmate,

28  was incarcerated at SVSP. (Decl. Feudale, Ex. C.) While incarcerated at SVSP, Plaintiff was

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
                                                                C 06-1725 JF

4

1  housed in Facility "A," Building 3, Cell 202. (Decl. Evans Supp. Def.'s Mot. Summ J. (Decl.

2  Evans) ¶ 14.)

3  **B.    Housing Facilities at SVSP.**

4    3.    At SVSP there are four housing facilities lettered A, B, C, and D. Within A and B

5  Facilities there are five buildings numbered 1 through 5 and a gym housing approximately 200

6  inmates within each building. During the time period alleged in Plaintiff's Amended Complaint,

7  some inmates living in A and B Facilities were housed in the Facility's gym. Conversely, C and

8  D Facilities, which house high security general population inmates and administrative

9  segregation inmates, have eight buildings numbered 1-8 with two separate recreational yards and

10  house approximately 120 inmates within each building. Within each building housing inmates

11  on Facilities A and B, there are two tiers housing approximately one hundred inmates on each

12  tier. A tier is a story or level containing cells housing inmates. Each tier in Buildings 1-5 on

13  Facilities A and B contains approximately 25 cells designed to house two inmates in each cell.

14  (Decl. Evans ¶ 4.)

15    4.    Within each housing facility at SVSP, including Facility "A," there are one or more

16  recreation yards (yard). Each yard is an outdoor area comprised of a large grass field

17  approximately 100 yards long surrounded by a dirt jogging track. Along different parts of the

18  jogging track are cement benches with tables where inmates can sit and socialize. Furthermore,

19  each yard has a basketball court and an area with parallel bars where inmates can do resistance

20  exercises, such as pull-ups, chin-ups, and bar dips. (Decl. Evans ¶ 5.)

21    5.    Also within each housing facility at SVSP, including Facility "A," there are day rooms

22  located within each building housing inmates. A day room is a large common area located on the

23  lower tier of a particular building between the cell doors of the inmates housed on the lower tier

24  and the building's control booth and sally port area. In the day room inmates can watch

25  television, use the telephone, play cards, and socialize. While aerobic exercise is not permitted

26  in the day room, inmates can freely walk around and are sometimes allowed to do low impact

27  exercise such as push-ups. (Decl. Evans ¶ 6.)

28    6.    In January 2005, and today, Plaintiff has been housed in Facility "A." Facility "A" is a

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
                                                                  C 06-1725 JF

1  sensitive needs yard.  Sensitive needs yard housing on Facility "A" at SVSP is a housing unit

2  designed for inmates that need a safe environment due to their inability to safely program in a

3  traditional general population setting.   Sensitive needs yard inmates are generally comprised of

4  inmates who are drop outs of prison gangs or disruptive groups, are victims or targets for assault

5  because of their commitment offense or their age, or have enemy concerns.  Sensitive needs yard

6  housing designed to provide a place where inmates can work, attend educational programs,

7  participate in physical recreation, attend religious activities, receive medical treatment, have

8  visits, participate in leisure time activities, and establish a general population program while

9  committed to the custody of the California Department of Corrections and Rehabilitation.  (Decl.

10  Evans ¶ 15.)

11  **C.    Recreation Afforded Inmates at SVSP.**

12      7.    From January 1, 2005 through January 26, 2005, and currently, SVSP is operating on a

13  rotational recreation schedule (yard/day room rotation) due to prison overcrowding and staff

14  shortages.  The yard/day room rotation has been implemented to ensure institutional security,

15  while at the same time ensuring that every inmate is afforded an equal opportunity to enjoy the

16  prison's daily activities, including recreation time.  Without implementing a yard/day room

17  rotation, SVSP could not successfully provide all inmates with recreational time because too

18  many inmates would be on the prison's recreational yards at one time creating a threat to

19  institutional security.  Such a scenario would create grave security risks for both inmates and

20  staff alike because SVSP's recreational yards, due to their size, could not be properly monitored

21  (Decl. Evans ¶ 7.)

22      8.    The yard/day room rotation is set forth in a daily activity schedule which is followed by

23  all facilities, unless institutional lockdowns, modified programs, adverse weather conditions,

24  other emergencies, or operational necessities warrant a change in program.  (Decl. Evans ¶ 8.)

25      9.    Under the yard/day room rotation, inmates are afforded the opportunity to exercise on

26  the prison yard every other day based on a building and tier rotation.  Accordingly with respect to

27  inmates housed on Facilities A and B, on odd days Buildings 1, 3, and 5 are released to the

28  recreational yard and on even days Buildings 2 and 4 are released to the recreational yard.

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                              *Padilla v. Evans*
                                                                            C 06-1725 JF

1  During the time period alleged in Plaintiff's Amended Complaint, inmates housed in the gym

2  were also released to the recreation yard on even days.  Under the yard/day room rotation, each

3  facility provides two separate yard releases, which alternate based on a tier rotation.  Thus, on the

4  day that a particular building is scheduled for yard release, inmates housed within that building

5  will have the opportunity to attend yard either in the morning or in the afternoon depending on

6  their tier assignment.  (Decl. Evans ¶ 9.)

7       10.   During the times one tier in a building is using the facility's recreational yard in

8  Facilities A and B, the other tier is afforded the opportunity use the building's day room.  (Decl.

9  Evans ¶ 10.)

10      11.   Under the yard/day room rotation in Facilities A and B, morning yard commences at

11  9:00 a.m. and ends at 11:30 a.m. and afternoon yard commences at 1:00 p.m. and ends at 3:30

12  p.m.  Similarly, under the rotational plan, morning day room commences at 9:15 a.m. and ends at

13  11:15 a.m., while afternoon day room commences at 1:15 p.m. and ends at 3:15 p.m.  Thus, on

14  the days a building is scheduled for yard, inmates are afforded a total of four and a half hours of

15  the opportunity to exercise, including two and a half hours of outdoor exercise.  (Decl. Evans ¶

16  11.)

17      12.   Under the yard/day room rotation in Facilities A and B, on the days a building is not

18  scheduled for yard release, inmates housed within that building are still afforded the opportunity

19  to use the day room for either two hours in the morning or for two hours in the afternoon,

20  depending on their tier rotation.  (Decl. Evans ¶ 12.)  Thus, inmates are afforded the opportunity

21  to exercise outdoors for two and a half hours every other day and are afforded the opportunity to

22  exercise in the day room everyday for two hours.  (*Id.* at ¶¶ 9-12.)

23      13.   Moreover, inmates are also afforded the opportunity to do low impact exercise within

24  their cells such as knee bends, jumping jacks, sit-ups, and push-ups.  (Decl. Evans ¶ 12.)

25      14.   All inmates are given the choice to attend these recreational programs.  On any given

26  day, an inmate may chose to remain in his cell rather than to go out to the recreational yard or the

27  day room.  (Decl. Evans ¶ 13.)

28  ///

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
                                                                                 C 06-1725 JF

**D.    Exercise Opportunities Afforded Plaintiff During the Month of January 2005.**

15.    Plaintiff was housed in Facility "A," Building 3, Cell 202 during the month of January 2005.  Further, during the month of January 2005, Plaintiff's housing unit, Facility "A," was operating on a yard/day room rotation, and deviated from it only on a couple of days when institutional emergencies or operational necessity warranted a change in program.  Accordingly, for most of the month of January 2005, Plaintiff was afforded the opportunity to exercise outdoors on odd days either in the morning or in the afternoon, depending on his tier rotation, and exercise in the day room during the alternate time slot on that day.  And on even days, Plaintiff was afforded the opportunity to exercise in the day room, either in the morning or in the afternoon, depending on his tier rotation.  In fact, from January 1 through January 26, 2005, Plaintiff was afforded the opportunity to exercise outside of his cell for approximately forty-five hours, seventeen of which he was afforded the opportunity to exercise outdoors.  (Decl. Evans ¶¶ 9-14; Decl. Selby Supp. Def.'s Mot. Summ. J., Ex. A (Bates Nos. DEF 001-DEF 065.)

16.    As stated above, Facility "A" is designated as a sensitive needs yard.  Sensitive needs yard inmates, regardless of the reason for their placement on a sensitive needs yard, are all afforded the same amount of exercise time as each other.  Furthermore, the yard/day room rotation, implemented in Plaintiff's housing unit during the month of January 2005, was equally implemented on the other three housing facilities at SVSP at the time.  (Decl. Evans ¶ 15.)

## LEGAL STANDARD

Summary judgment is appropriate "where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, entry of summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  There is no triable issue of fact unless there is sufficient evidence favoring

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                                           *Padilla v. Evans*
                                                                                                                                   C 06-1725 JF

8

1  the non-moving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249. In

2  addition, when the non-moving party's version of the facts is "blatantly contradicted by the

3  record, so that no reasonable jury could believe it, a court should not adopt that version of the

4  facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S. Ct.

5  1769, 1776 (2007).

### ARGUMENT

### I.

**DEFENDANT DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT BY AFFORDING HIM ADEQUATE OPPORTUNITIES TO EXERCISE OUTSIDE OF HIS CELL DURING THE MONTH OF JANUARY 2005.**

11  To prove an Eighth Amendment claim for deprivation of humane conditions of

12  confinement, a prisoner must satisfy two requirements. First, he must objectively show the

13  deprivation was "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991). Second,

14  he must show the prison official subjectively acted with a "sufficiently culpable state of mind"

15  described as "deliberate indifference." *Id.*

**A.  The Deprivation of Outdoor Exercise Plaintiff Alleges Was Not Sufficiently Serious.**

18  [T]he Constitution does not mandate comfortable prisons. . . ." *Rhodes v. Chapman*, 452

19  U.S. 337, 348 (1981). Conditions which are considered restrictive, harsh, or even uncomfortable,

20  may be "part of the penalty that criminal offenders pay for their offenses against society." *Id.* at

21  347-48. Housing an inmate in "less amenable and more restrictive quarters for nonpunitive

22  reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."

23  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Accordingly, to satisfy the objective component

24  under the Eighth Amendment, Plaintiff must demonstrate he has been deprived of "the minimal

25  civilized measures of life's necessities." *Rhodes*, 452 U.S. at 347.

26  In *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979), the Ninth Circuit held that "some

27  form of regular exercise is extremely important to the psychological and physical well being of

28  the inmates." The court, however, specifically declined to decide whether deprivation of outdoor

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                                    *Padilla v. Evans*
C 06-1725 JF

9

1   exercise was a per se constitutional violation. *Id.* Rather, the court limited its holding to inmates

2   who were confined in segregated housing for more than four years, spending virtually twenty-

3   four hours a day in their cells without any opportunity for outdoor exercise. *Id.* at 199-200. In

4   reaching its decision, the Ninth Circuit affirmed the district court's decision requiring inmates

5   housed under these conditions be afforded regular intervals of outdoor exercise, "unless

6   inclement weather, unusual circumstances, or disciplinary needs made that impossible." *Id.* at

7   199. Similarly, in *Toussaint v. Yockey*, 722 F.2d 1490, 1492-93 (9th Cir. 1984), the Ninth

8   Circuit upheld a district court's preliminary injunction requiring outdoor exercise where a

9   majority of the class-action plaintiffs were confined in their cells for as much as twenty three and

10  a half hours a day for a one year period.

11       Also, in *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1995), the Ninth Circuit held that

12  prison officials violated the Eighth Amendment by providing an inmate with forty-five minutes

13  of outdoor exercise a week for a six week period during his confinement in segregated housing

14  where the inmate was confined "indefinite[ly] . . . and under admittedly harsh conditions." *Id.* at

15  1088. However, in reaching its decision, the Ninth Circuit recognized that "practical difficulties

16  that arise in administering a prison from time to time might justify an occasional and brief

17  deprivation of an inmate's opportunity to exercise outside." *Id.*; *see also Lopez v. Smith*, 203

18  F.3d 1122, 1132-33 (9th Cir. 2000) (holding the denial of all access to outdoor exercise for a six

19  and a half week period violated the Eighth Amendment).

20       Conversely, in *Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980), the Ninth Circuit

21  held that a temporary lockdown in response to an institutional emergency where prisoners were

22  deprived of exercise for one month did not amount to a constitutional violation. Likewise, in

23  *LeMaire v. Maass*, 12 F.3d 1444, 1457-58 (9th Cir. 1993), the Ninth Circuit held that prison

24  officials did not violate the Eighth Amendment in denying an inmate outdoor exercise for

25  extended periods of time where the inmate could still exercise in his cell. *See also May v.

26  Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("temporary denial of outdoor exercise with no

27  medical effects is not a substantial deprivation").

28       In this case, the amount of outdoor exercise Plaintiff was afforded from January 1 through

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
                                                                                  C 06-1725 JF

1   January 26, 2005, does not amount to a serious deprivation of Plaintiff's Eighth Amendment

2   right to exercise outdoors.  Unlike the plaintiffs in *Spain, Toussaint,* and *Allen,* Plaintiff was not

3   housed in administrative segregation but rather in SVSP's sensitive needs yard.  (Stmt Facts ¶ 6.)

4   Inmates housed within the sensitive needs yard at SVSP are afforded the opportunity to work,

5   attend educational programs, attend religious activities, participate in physical recreation and

6   leisure time, and have visiting privileges.  (*Id.*)  Accordingly, Plaintiff was not confined in his

7   cell for virtually the entire day, with few chances to leave, like the inmates in *Spain, Toussaint,*

8   and *Allen,* but rather was provided with many opportunities to exit his cell and participate in

9   prison programs.  *See Spain,* 600 F.2d at 199-200; *Toussaint,* 722 F.2d at 1492-93; *Allen,* 48 F.3d

10  at 1087-88.

11      Furthermore, during the month of January 2005, SVSP implemented a yard/day room

12  rotation due to prison overcrowding and staff shortages to ensure that all inmates were afforded

13  equal access to outdoor and indoor exercise.  (Stmt. Facts ¶ 7.)  This rotational recreation

14  schedule was necessary because SVSP could not otherwise provide all inmates with outdoor

15  recreational time without posing a threat to institutional security.  (*Id.*)  Under the yard/day room

16  rotation, inmates were afforded the opportunity to exercise in the prison yard every other day

17  based on a building and tier rotation, and were afforded the opportunity to exercise in their

18  housing unit's day room everyday.  (*Id.* ¶ 9-12.)

19      Accordingly, prison records indicate that Plaintiff was afforded the opportunity to exercise

20  out of his cell for forty-five hours between January 1 through January 26, 2005, including

21  seventeen hours of outdoor exercise.  (Stmt. Facts ¶ 15.)  Attached to his Amended Complaint is

22  a copy of a personal log Plaintiff created memorializing the amount of exercise he believes he

23  was afforded from January 1 through January 26, 2005.  (*See* Pl.'s 1st Am. Compl., Ex. A.)

24  Even by his own account, Plaintiff admits that he was afforded over twenty-six hours of exercise

25  time, including over nine and a half hours of outdoor exercise during this time period.  (*Id.*)

26  Moreover, during this entire time period, Plaintiff was also afforded the opportunity to do low

27  impact exercise in his cell.  (Stmt. Facts. ¶ 13.)

28      In sum, the amount of exercise Plaintiff was afforded between January 1 through January

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                     *Padilla v. Evans*
                                                                                   C 06-1725 JF

1   26, 2005, did not amount to a sufficiently serious constitutional deprivation. *Wilson,* 501 at 298.

2   Rather, as the evidence shows, Plaintiff was afforded numerous opportunities to exercise, both

3   outdoors and indoors, during this time period, despite the fact that "unusual circumstances"

4   warranted the implementation of a rotational recreation schedule. *Spain,* 600 F.2d at 199;

5   *Hayward,* 629 F.2d at 603; *LeMaire,* 12 F.3d at 1457-1458.  Accordingly, Plaintiff fails to satisfy

6   the objective component required to establish an Eighth Amendment violation.

7       **B.   Defendant Did Not Act with Deliberate Indifference in Providing Plaintiff
8           with Numerous Opportunities to Exercise During the Month of January
        2005.**

9       As stated above, to satisfy the subjective component of an Eighth Amendment analysis,

10  Plaintiff must establish that Defendant acted with "deliberate indifference" towards Plaintiff's

11  need to exercise. *Wilson,* 501 U.S. at 303; *Allen,* 48 F.3d 1088.  According to the Supreme

12  Court, a prison official cannot be found liable for acting with deliberate indifference unless he

13  "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan,*

14  511 U.S. 825, 837 (1994).

15      However, in determining whether a prison official acted with deliberate indifference, the

16  court must take into account the fact that "prisons by definition, are places of involuntary

17  confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often

18  violent conduct." *Berg v. Kincheloe,* 794 F.2d 457, 461 (9th Cir. 1986) (*quoting Hudson v.*

19  *Palmer,* 468 U.S. 517, 526 (1984)).  Indeed, "[p]rotecting the safety of prisoners and staff often

20  involves difficult choices and evades easy solutions." *Id.* at 460.  Occasionally "[p]ublic

21  'deliberate indifference' or manpower limitations may place constraints on the choices available

22  to prison officials." *Id.* at 461.  "Prison administrators therefore should be accorded wide-

23  ranging deference in the adoption and execution of policies and practices that in their judgment

24  are needed to preserve internal order and discipline and to maintain institutional security." *Bell*

25  *v. Wolfish,* 441 U.S. 520, 547 (1979).

26      In his First Amended Complaint, Plaintiff alleges that Defendant acted with deliberate

27  indifference by refusing to provide Plaintiff with outdoor exercise in spite of the "pain and

28  suffering" his actions have caused. (Pl.'s 1st Am. Compl. 5-6.)  However, Plaintiff offers no

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.

*Padilla v. Evans*
C 06-1725 JF

12

1   evidence to establish that the rotational recreation schedule the prison was placed on during the

2   month of January 2005 caused him physical suffering.  Plaintiff's failure to do so demonstrates

3   the absence of a material issue of fact with respect to his Eighth Amendment claim.  *See Berg*,

4   794 F.2d at 459 ("The party opposing summary judgment must not rest on conclusory

5   allegations, but must set forth facts showing there is a genuine issue for trial.").

6       Moreover, Plaintiff fails to demonstrate that Defendant knew of and disregarded an

7   excessive risk to his health or safety by implementing a rotational recreation schedule during the

8   month of January 2005.  (Pl.'s 1st Am. Compl. 5-7.)  To the contrary, as the evidence

9   demonstrates, Defendant implemented the rotational recreation schedule in an effort to *protect*

10  inmate and staff safety and institutional security.  (Stmt. Facts ¶ 7.)

11      Furthermore, as both the Supreme Court and the Ninth Circuit have held, courts should

12  accord prison officials deference in adopting and executing policies needed to preserve order and

13  maintain institutional security, as courts are ill equipped to deal with the myriad of problems

14  prison officials face.  *Bell*, 441 U.S. at 547-48 & n.29; *Berg*, 794 F.2d at 460-61.  The rotational

15  recreation schedule was set up in an effort to ensure institutional security, while also ensuring

16  that all inmates were afforded regular opportunities to exercise both outside of their cells and

17  outdoors.  (Stmt. Facts ¶¶ 7, 9-12.)  If such a program were not implemented, both staff and

18  inmate safety would have been jeopardized as too many inmates would have been on the prison's

19  recreational yards at one time, making the yards difficult to safely monitor.  (*Id.* ¶ 7.)  Because

20  "[t]he prison setting is at best tense . . . .sometimes explosive, and always potentially dangerous,"

21  *Berg*, 794 F.2d at 461 (*quoting Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976),

22  Defendant had to chose the best program to prevent outbreaks of violence and maintain

23  institutional security.  In making the decision to implement a rotational recreational program, it

24  cannot be said that Defendant acted with deliberate indifference to Plaintiff's right to exercise

25  outdoors.  Thus, Plaintiff fails to satisfy the subjective component required to establish an Eighth

26  Amendment violation.

27      Because Plaintiff fails to satisfy the requisite objective and subjective components to

28  establish an Eighth Amendment violation, Defendant is entitled to judgment as a matter of law.

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                                         *Padilla v. Evans*
                                                                                                                              C 06-1725 JF

13

1  Accordingly, judgment should be granted in Defendant's favor with respect to Plaintiff's Eighth

2  Amendment claim.

**II.**

**DEFENDANT DID NOT VIOLATE PLAINTIFF'S RIGHT TO EQUAL PROTECTION BECAUSE PLAINTIFF WAS NOT TREATED DIFFERENTLY THAN OTHER SIMILARLY SITUATED INMATES, DEFENDANT LACKED DISCRIMINATORY INTENT, AND DEFENDANT HAD A RATIONAL BASIS FOR IMPLEMENTING A ROTATIONAL EXERCISE SCHEDULE.**

7  The Equal Protection Clause of the Fourteenth Amendment requires that "all persons

8  similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

9  432, 439 (1985). Thus, an equal protection claim fails if the plaintiff cannot show that he has

10  been treated differently from other similarly situated individuals. *Fraley v. United States Bureau*

11  *of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993). Further, to state a claim under 42 U.S.C § 1983 for a

12  violation of the Equal Protection clause, "a plaintiff must show that the defendant[] acted with an

13  intent or purpose to discriminate against the plaintiff based on membership within a protected

14  class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Lastly, if a plaintiff, who is

15  not a member of a suspect class, is successful in establishing intentional discrimination of those

16  similarly situated to himself, he must also prove that the state lacked a rational basis for the

17  dissimilar treatment. *Cleburne Living Center*, 473 U.S. 439-42; *Coakley v. Murphy*, 884 F.2d

18  1218, 1221-22 (9th Cir. 1989).

19  **A.  Plaintiff Was Not Similarly Situated to Inmates Housed Within the General Population.**

20

21  In order to establish an equal protection violation, Plaintiff must first prove that he was

22  treated differently than other similarly situated inmates. *Cleburne Living Center*, 473 U.S. at

23  439; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("the plaintiff . . . bears

24  the burden of proving that she 'has been intentionally treated differently from others similarly

25  situated . . . ."); *Fraley*, 1 F.3d at 926; *Montano v. Galaza*, No. CV F-03-5891 AWI DLB I,

26  2007 WL 1840370 at *2 (E.D. Cal. June 27, 2007) ("Plaintiff must allege that defendants treated

27  him differently than similarly situated inmates."). "Evidence of different treatment of unlike

28  groups does not support an equal protection claim." *Thornton*, 425 F.3d at 1168.

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
C 06-1725 JF

14

1    In his First Amended Complaint, Plaintiff alleges that he, as a sensitive needs inmate, was

2    denied the same access to exercise as enjoyed by inmates housed within the general population.

3    (Pl.'s Am. Compl. 7.)  However, Plaintiff was not similarly situated to inmates housed within the

4    general population.  Unlike inmates housed within the general population, inmates with sensitive

5    needs at SVSP require a safe housing environment due to their inability to safely program with

6    the general population because of their status as prison gang drop-outs, their commitment offense

7    or age, or because of enemy concerns.  (Stmt. Facts ¶ 6.)  Accordingly, Plaintiff must allege that

8    he was not afforded the same amount of exercise time as those inmates housed within the

9    sensitive needs yard, as these inmates were the individuals who were similarly situated to

10   Plaintiff.  Plaintiff fails to raise such an allegation in his First Amended Complaint (*see* Pl.'s Am.

11   Compl.), nor could he since sensitive needs inmates, regardless of the reason for their placement

12   on a sensitive needs yard, are all afforded the same amount of exercise time as each other.  (Stmt.

13   Facts ¶ 16.)

14   Furthermore, Plaintiff's equal protection claim fails because the rotational recreation

15   schedule implemented in Plaintiff's housing facility was equally implemented on the other three

16   housing facilities at SVSP at the time, including the general population yards.  (*Id.*)  Because

17   Plaintiff fails to show that he was treated differently than other similarly situated inmates,

18   Plaintiff has not established an equal protection violation.  Accordingly Defendant is entitled to

19   judgment as a matter of law.

20   **B.    Plaintiff is Not a Member of a Protected Class, Nor Did Defendant Act With**
         **Discriminatory Intent in Implementing a Rotational Exercise Schedule.**
21

22   In order to establish an equal protection violation, Plaintiff must also establish that

23   Defendant "acted with an intent or purpose to discriminate based on membership in a protected

24   class." *Barren*, 152 F.3d at1194; *see also Gutierrez v. Mun. Court of the Se. Judicial Dist.*, 838

25   F.2d 1031, 1047 (9th Cir. 1988) ("purposeful discrimination is an essential element of an equal

26   protection clause violation. . . ."), *vacated as moot* 490 U.S. 1016 (1989); *Granville v. Plummer*,

27   Case No. C 97-3513 MHP, 1999 WL 66513 at *12 (N.D. Cal. Feb. 9, 1999) ("A plaintiff alleging

28   denial of equal protection under 42 U.S.C. § 1983 must plead intentional unlawful discrimination

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
                                                                                  C 06-1725 JF

1  or allege facts that are at least susceptible of discriminatory intent."). "'Discriminatory purpose' .

2  . . implies more than intent as a volition or intent as awareness of consequences.  It implies that

3  the decision maker . . . selected or reaffirmed a particular course of action at least in part

4  'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'"  *Lee v. City*

5  *of Los Angeles*, 205 F.3d 668, 687 (9th Cir. 2001) (*quoting Personnel Adm'r of Massachusetts v.*

6  *Feeney*, 442 U.S. 256, 279 (1979).

7       Even assuming that Plaintiff was treated differently than similarly situated inmates, Plaintiff

8  fails to establish that he is a member of a suspect class and that Defendant acted with

9  discriminatory intent in implementing the rotational recreation schedule.  In his First Amended

10 Complaint, Plaintiff alleges that he has been subjected to discriminatory treatment because he is a

11 sensitive needs inmate. (Pl.'s 1st Am. Compl. 7.)  However, because sensitive needs inmates are

12 a large and amorphous group of individuals, comprised of prison gang dropouts and inmates with

13 other safety concerns (Stmt. Facts ¶ 6), they do not qualify as a suspect class for equal protection

14 purposes.  This is because sensitive needs inmates have not been "subjected to unique disabilities

15 on the basis of stereotyped characteristics . . . .," nor have they been subjected to "a history of

16 purposeful, unequal treatment or relegated to . . . a position of political powerlessness."

17 *Massachusetts Bd. Ret. v. Murgia*, 427 U.S. 307, 313 (1976).  Accordingly, sensitive needs

18 inmates do not constitute a suspect class for equal protection purposes.

19      Moreover, Plaintiff fails show that Defendant acted with an intent or purpose to

20 discriminate.  In his First Amended Complaint, Plaintiff merely alleges that Defendant is "well

21 aware of the fact that many of the inmates housed within his housing facility are assigned [there]

22 . . . due to crimes which are abhorred by correctional officials (i.e., child molestation, and sex

23 crimes)" and that Defendant used these unfavorable convictions as a basis to discriminate against

24 the entire class of sensitive needs inmates, including Plaintiff. (Pl.'s 1st Am. Compl. 9.)

25 However, other than making this conclusory allegation, Plaintiff provides no evidence to

26 establish that Defendant's actions in implementing a rotational recreational schedule were

27 motivated by discriminatory animus towards Plaintiff.  "[C]onclusory statements of bias do not

28 carry the non-moving party's burden in opposition to a motion for summary judgment."

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
                                                                                      C 06-1725 JF

16

1  *Thornton*, 425 F.3d at 1167.

2      Additionally, contrary to Plaintiff's assertions, the evidence establishes that Defendant's

3  decision to implement the rotational exercise schedule was not made for the purpose of

4  discriminating against Plaintiff or other sensitive needs inmates, but rather to ensure institutional

5  security. (Stmt. Facts ¶ 7.) Furthermore, Plaintiff's allegations of discriminatory intent or

6  purpose are undercut by the fact that the rotational recreation schedule was equally implemented

7  on all facilities at SVSP. (*Id.* ¶ 16.)

8      Because Plaintiff is not a member of a protected class, nor were Defendant's acts motivated

9  by discriminatory animus, Plaintiff fails to establish an equal protection violation. Accordingly,

10  Defendant is entitled to summary judgment.

11      **C.   Defendant's Decision to Implement a Rotational Recreational Schedule Was
            Rationally Related to a Legitimate State Objective.**

12

13      Assuming arguendo that the Plaintiff establishes that he was being treated differently than

14  similarly situated inmates and that Defendant's acts were motivated by discriminatory intent,

15  Plaintiff's equal protection claim still fails because Defendant's acts were rationally related to a

16  legitimate state objective.

17      In undertaking an equal protection analysis, "[t]he general rule is that legislation is

18  presumed to be valid and will be sustained if the classification drawn by the statute is rationally

19  related to a legitimate state interest." *Cleburne Living Center*, 473 U.S. at 440. Accordingly,

20  "[w]hen a state policy does not adversely affect a suspect class or impinge upon a fundamental

21  right, all that is required of the state's program is that it be rationally related to a legitimate state

22  objective." *Coakley*, 884 F.2d at 1221-22 (analyzing an inmate's equal protection challenge to

23  participate in a work release program under the rational basis test); *Moreland v. United States*,

24  968 F.2d 655, 660 (8th Cir. 1992) (because pre-sentenced defendants are not a suspect class, their

25  equal protection claims are reviewed under a rational basis standard); *Granville,* 1999 WL 66513

26  at *12 (reviewing a pre-trial detainee's equal protection claim alleging insufficient outdoor

27  exercise under a rational basis standard where the plaintiff did not allege membership in a

28  suspect class).

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                         *Padilla v. Evans*
                                                                     C 06-1725 JF

17

1    As stated above, Plaintiff, a sensitive needs inmate, is not a member of a suspect class. In

2  addition, there is no authority recognizing the right to exercise outdoors as fundamental.

3  Accordingly, Defendant's decision to implement a rotational exercise schedule must be analyzed

4  under a rational basis standard.

5    In January 2005, SVSP was suffering from prison overcrowding and staffing shortages.

6  (Stmt. Fact ¶ 7.)  In an effort to ensure that all inmates at SVSP were afforded an equal

7  opportunity to participate in SVSP's daily programs, including recreational time, while at the

8  same time accounting for institutional security, Defendant implemented a rotational recreation

9  schedule.  (*Id.*)  Without implementing such a schedule, SVSP could not successfully provide all

10  inmates with outdoor recreation because too many inmates would be located on a prison yard at

11  one time, which due to their size, created the threat that the prison's yards could not be properly

12  monitored.  (*Id.*)  Such a scenario created a grave security risk for both inmates and staff alike.

13  (*Id.*)

14    Defendant's concern for inmate, staff, and institutional safety constitutes a legitimate state

15  interest.  Furthermore, Defendant's rotational recreation schedule, which was set up to ensure

16  that all inmates were afforded equal opportunities to exercise, was rationally related to

17  Defendant's concerns for institutional security.  Because Defendant had a rational basis for

18  implementing the rotational recreation schedule, Plaintiff's equal protection rights were not

19  violated.

20    In sum, because Plaintiff fails to show that he was treated differently than other similarly

21  situated inmates, because Defendant's acts were not motivated by discriminatory animus, and

22  because Defendant's decision to implement a rotational recreation schedule was rationally related

23  to the legitimate state interest of institutional safety, Plaintiff's equal protection claim lacks

24  merit.  Therefore, summary judgment must be granted in Defendant's favor with regard to

25  Plaintiff's equal protection claim.

26                                  **III.**

27          **DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**

28    The defense of qualified immunity provides peace officers with a conditional "entitlement

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                          *Padilla v. Evans*
                                                                        C 06-1725 JF

1  not to stand trial or face other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526

2  (1985). It protects "government officials . . . from liability for civil damages insofar as their

3  conduct does not violate clearly established statutory or constitutional rights of which a

4  reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

5  rule of qualified immunity "provides ample protection to all but the plainly incompetent or those

6  who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991) (citation omitted).

7      In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a sequential two step

8  analysis to be considered in determining whether qualified immunity exists. The Court must first

9  consider this threshold question: "Taken in the light most favorable to the party asserting the

10  injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.

11  If no constitutional right was violated under the alleged facts, the inquiry ends and defendants

12  prevail. *Saucier*, 533 U.S. at 201.

13      If, however, "a violation could be made out on a favorable view of the parties' submissions,

14  the next, sequential step is to ask whether the right was clearly established." *Id.* According to

15  the Supreme Court in *Saucier*, "a right is clearly established . . . [if] it would be clear to a

16  reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If

17  the law did not put the officer on notice that his conduct would be clearly unlawful, summary

18  judgment based on qualified immunity is appropriate." *Id.*

19      The qualified immunity analysis is distinct from the inquiry on the merits of the

20  constitutional violation. *Id*; *see also Mitchell*, 472 U.S. at 527-28 ("A claim of immunity is

21  conceptually distinct from the merits of the Plaintiff's claim that his rights have been violated.").

22  The Supreme Court has held that the goal of qualified immunity would be undermined if a court

23  denied summary judgment each time a material issue of fact remains on an claim. *Saucier*, 533

24  U.S. at 202.

25      As discussed in detail above, Plaintiff fails to show how Defendant's actions in

26  implementing a rotational recreational schedule violated Plaintiff's constitutional rights to be free

27  from cruel and unusual punishment and to equal protection under the law. Specifically, Plaintiff

28  fails to show how Defendant, in affording Plaintiff approximately forty-five hours of exercise

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
C 06-1725 JF

19

1   time between January 1 through January 26, 2005, deprived Plaintiff of his constitutional right to

2   exercise or acted with deliberate indifference to Plaintiff's health or safety. (*See supra* Part I.)

3   Moreover, Plaintiff fails to show how Defendant in equally implementing a rotational recreation

4   schedule for all housing facilities at SVSP, including Facility "A" where Plaintiff was housed

5   with other similarly situated inmates, violated Plaintiff's right to equal protection. (*See supra*

6   Part II.) Accordingly, Plaintiff cannot satisfy this element.

7        Assuming *arguendo* that Defendant's conduct violated Plaintiff's constitutional rights, it

8   would not have been clear to a reasonable official that such conduct was unlawful in the situation

9   confronted. During the month of January 2005, when Defendant implemented the rotational

10  recreational schedule, the Ninth Circuit had already held that the long-term denial of outdoor

11  exercise violated the Eighth Amendment. *See Spain*, 600 F.2d at 199-200; *Toussiant*, 722 F.2d

12  at 1492-93. Following this precedent, the Ninth Circuit found that locking an inmate in his cell

13  for six weeks with only forty-five minutes of exercise a week, violated the Eighth Amendment's

14  prohibition against cruel and unusual punishments. *See Allen*, 48 F.3d at1087-1088. Yet, the

15  Ninth Circuit had also held that the temporary denial of outdoor exercise in response to unusual

16  circumstances, security threats, and institutional emergencies was appropriate. *See Hayward*,

17  629 F.2d at 603; *LeMaire*, 12 F.3d at 1457-1458; *May*, 109 F.3d at 565. Accordingly, it cannot

18  be said that it would have been clear to a reasonable official in Defendant's position that in

19  implementing a rotational recreation schedule designed to afford all inmates equal access to

20  outdoor exercise every other day, while at the same time ensuring institutional security, violated

21  clearly established federal law. (Stmt. Facts ¶ 7.) Also, a reasonable officer in Defendant's

22  position would not have believed that providing an inmate with the opportunity to exercise out of

23  his cell for approximately forty-five hours over a twenty-six day time period would have been

24  unlawful. (*Id*. ¶ 15.)

25       Likewise, it would not have been clear to a reasonable official in Defendant's position that

26  implementing a rotational recreation schedule equally on all prison yards at SVSP, including the

27  yard housing Plaintiff and other similarly situated inmates, for the purposes of maintaining

28  institutional security, violated clearly established federal law. (*Id*. ¶ 14.)

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                              *Padilla v. Evans*
                                                                            C 06-1725 JF

20

1    Because Plaintiff fails to prove that Defendant violated his Eighth Amendment right to

2  outdoor exercise and Fourteenth Amendment right to equal protection and because a reasonable

3  official in placed in Defendant's position would have believed his conduct was lawful, Defendant

4  is entitled to qualified immunity.

5                                          **CONCLUSION**

6    Defendant did not violate Plaintiff's Eighth Amendment right to be free from cruel and

7  unusual punishment because the constitutional deprivation Plaintiff complains of is not

8  sufficiently serious and because Defendant did not act with deliberate indifference to Plaintiff's

9  health or safety in implementing a rotational recreation schedule for institutional security

10  reasons.  Therefore, summary judgment must be granted with respect to this claim.  In addition,

11  Defendant is entitled to summary judgment with respect to Plaintiff's equal protection claim

12  because Plaintiff fails to establish that he was treated differently from other similarly situated

13  inmates, that Defendant acted with discriminatory intent, or that Defendant lacked a rational

14  basis for implementing the rotational recreation schedule.  Lastly, because Plaintiff fails to

15  establish the violation of his constitutional rights to freedom from cruel and unusual punishment

16  and equal protection and because a reasonable official placed in Defendant's position would not

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                                    *Padilla v. Evans*
C 06-1725 JF

21

1  have believed his actions to be clearly unlawful, Defendant is entitled to qualified immunity.

2  Accordingly, Defendant respectfully requests that his motion for summary judgment be granted.

3

         Dated:  May 1, 2008

4
                              Respectfully submitted,
5
                              EDMUND G. BROWN JR.
6                             Attorney General of the State of California

7                             DAVID S. CHANEY
                              Chief Assistant Attorney General
8                             FRANCES T. GRUNDER
                              Senior Assistant Attorney General
9
                              JONATHAN L. WOLFF
10                            Supervising Deputy Attorney General

11

12                            SCOTT J. FEUDALE
                              Deputy Attorney General
13                            Attorneys for Defendant M.S. Evans

14

15   40248243.wpd
     SF2006200423

16

17

18

19

20

21

22

23

24

25

26

27

28

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P. & A.                    *Padilla v. Evans*
                                                              C 06-1725 JF

22

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Padilla v. Evans**

No.:    **C 06-1725 MJJ**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 2, 2008,** I served the attached

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION SCOTT FEUDALE IN SUPPORT OF DEFENDANT'S MOTION TO MOTION FOR SUMMARY JUDGMENT w/Exhibits A, B & C**

**DECLARATION OF M. S. EVANS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF T. SELBY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT w/Exhibit A (Parts 1, 2 & 3)**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Larry D. Padilla (P-05966)
Salinas Valley State Prison
P. O. Box 1050
Soledad, CA 93960-1050
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 2, 2008**, at San Francisco, California.

| | |
|---|---|
| M. Luna | _M. Luna_ |
| Declarant | Signature |

40248901.wpd