1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  SCOTT J. FEUDALE, State Bar No. 242671
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5871
    Fax:  (415) 703-5843
8   Email:  Scott.Feudale@doj.ca.gov

9  Attorneys for Defendant M.S. Evans

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15 **LARRY DEAN PADILLA,**                    CASE NO. C 06-1725 JF

                              Plaintiff,     **DECLARATION OF M. S.**
16                                           **EVANS IN SUPPORT OF**
                                             **DEFENDANT'S MOTION**
17        v.                                 **FOR SUMMARY JUDGMENT**

   **M. S. EVANS,**
18
                              Defendants.
19

20      I, M. S. Evans, declare:

21      1.    I am the Warden of Salinas Valley State Prison (SVSP).  I have been employed with

22  the California Department of Corrections and Rehabilitation for twenty three and a third years.  I

23  have served as the Warden at SVSP for three and a half years.

24      2.    I have personal knowledge of the information set forth below, and if called as a witness

25  in this matter, I could and would so competently testify.  I submit this declaration in support of

26  Defendant's Motion for Summary Judgment.

27      3.    From January 1 through January 26, 2005, the dates alleged in Plaintiff's First

28  Amended Complaint, I was working as the Acting Warden of SVSP.  As the Acting Warden, I

Decl. Evans Supp. Def.'s Mot. Summ. J.                          Padilla v. Evans
                                                                C 06-1725 JF

1 | was charged with the overall management of SVSP, which required me to ensure that programs

2 | were running smoothly on each of SVSP's four housing units (facilities), including "A" Facility,

3 | Plaintiff's housing unit. As Acting Warden, I also ensured that each facility was operating in a

4 | safe and secure manner at all times. In accordance with my duties, I am required to create a daily

5 | activity schedule for implementation throughout the institution. Included within the daily

6 | activity schedule is a yard/day room rotation which is used to coordinate inmates' recreational

7 | time.

8 |     4.    At SVSP there are four housing facilities lettered A, B, C, and D. Within A and B

9 | Facilities there are five buildings numbered 1 through 5 housing approximately 200 inmates

10 | within each building. During the time period alleged in Plaintiff's Amended Complaint, some

11 | inmates living in A and B Facilities were housed in the Facility's gym. Conversely, C and D

12 | Facilities, which house high security general population inmates and administrative segregation

13 | inmates, have eight buildings numbered 1-8 with two separate recreational yards, and house

14 | approximately 120 inmates within each building. Within each building housing inmates on

15 | Facilities A and B, there are two tiers housing approximately one hundred inmates on each tier.

16 | A tier is a story or level containing cells housing inmates. Each tier in Buildings 1-5 on Facilities

17 | A and B contains approximately 50 cells designed to house two inmates in each cell.

18 |     5.    Within each housing facility at SVSP, including Facility "A," there are one or more

19 | recreation yards (yard). Each yard is an outdoor area comprised of a large grass field

20 | approximately 100 yards long surrounded by a dirt jogging track. Along different parts of the

21 | jogging track are cement benches with tables where inmates can sit and socialize. Furthermore,

22 | each yard has a basketball court and an area with parallel bars where inmates can do resistance

23 | exercises, such as pull-ups, chin-ups, and bar dips.

24 |     6.    Also within each housing facility at SVSP, including Facility "A," there are day rooms

25 | located within each building housing inmates. A day room is a large common area located on the

26 | lower tier of a particular building between the cell doors of the inmates housed on the lower tier

27 | and the building's control booth and sally port area. In the day room inmates can watch

28 | television, use the telephone, play cards, and socialize. While aerobic exercise is not permitted

Decl. Evans Supp. Def.'s Mot. Summ. J.

1  in the day room, inmates can freely walk around and are sometimes allowed to do low impact

2  exercise such as push-ups.

3      7.    During the month of January 2005, and currently, SVSP is operating on a yard/day

4  room rotation. This program is implemented to account for prison overcrowding, staffing

5  shortages, and institutional security. Under the yard/day room rotation all inmates housed within

6  SVSP are afforded an equal opportunity to SVSP's daily activities, including recreational time.

7  The yard/day room rotation is equally applied to all facilities located within the prison, including

8  Plaintiff's facility, Facility "A." Without implementing a yard/day room rotation, SVSP could

9  not successfully provide inmates with outdoor recreational time because too many inmates would

10  be located on the prison yard at the same time. Such a senario would create a grave security risk

11  for both inmates and staff alike because SVSP's recreational yards, due to their size, could not be

12  properly monitored.

13      8.    The yard/day room rotation is set forth in a daily activity schedule which is followed by

14  all facilities, unless institutional lockdowns, modified programs, adverse weather conditions,

15  other emergencies, or operational necessities warrant a change in program.

16      9.    Under the yard/day room rotation inmates are afforded the opportunity to exercise on

17  the prison yard every other day based on a building and tier rotation. Accordingly, with respect

18  to inmates housed in Facilities A and B, on odd days Buildings 1, 3, and 5 are released to the

19  recreational yard and on even days Buildings 2 and 4 are released to the recreational yard.

20  During the time period alleged in Plaintiff's Amended Complaint, inmates housed in the gym

21  were also released to the recreation yard on even days. Under the yard/day room rotation, each

22  facility provides two separate yard releases, which alternate based on a tier rotation. Thus, on the

23  day that a particular building is scheduled for yard release, inmates housed within that building

24  will have the opportunity to attend yard either in the morning or in the afternoon depending on

25  their tier assignment. For example, inmates housed on the upper tier of Building 1 would be

26  allowed to go to yard on January 1, 2008 in the morning, while inmates housed on the lower tier

27  of Building 1 would be allowed to go to yard in the afternoon on that day.

28      10.    During the times one tier in a building is out to yard in Facilities A and B, the other tier

Decl. Evans Supp. Def.'s Mot. Summ. J.                                    Padilla v. Evans
                                                                          C 06-1725 JF

1    is afforded the opportunity to use the building's day room.

2        11.   Under the yard/day room rotation in Facilities A and B, morning yard commences at

3    9:00 a.m. and ends at 11:30 a.m. and afternoon yard commences at 1:00 p.m. and ends at 3:30

4    p.m. Similarly, under the rotational plan, morning day room commences at 9:15 a.m. and ends at

5    11:15 a.m., while afternoon day room commences at 1:15 p.m. and ends at 3:15 p.m. Thus, on

6    the days a building is scheduled for yard, inmates are afforded a total of four and a half hours of

7    the opportunity to exercise, including two and a half hours of outdoor exercise.

8        12.   Under the yard/day room rotation in Facilities A and B, on the days a building is not

9    scheduled for yard release, inmates housed within that building are still afforded the opportunity

10   to use the day room for either two hours in the morning or for two hours in the afternoon,

11   depending on their tier rotation. Moreover, inmates also are always afforded the opportunity to

12   do low impact exercise within their cells such as knee bends, jumping jacks, sit-ups, and push-

13   ups.

14       13.   All inmates are given the choice to attend these recreational programs. On any given

15   day, and inmate may chose to remain in his cell rather than to go out to the recreational yard or

16   the day room.

17       14.   In accordance with SVSP's plan of operations, each facility floor officer and control

18   booth officer is required to keep a log of the daily activities of each building housing inmates.

19   While I am not personally familiar with Plaintiff, prison records indicate that during the month of

20   January 2005, Plaintiff was housed in A Facility, Building 3, Cell 202 (upper tier). A review of

21   the log books of Plaintiff's housing building indicate that during the month of January 2005,

22   Facility A was operating on a yard/day room rotation and only deviated from it on a few

23   occasions when an institutional emergency or operational necessity (such as staff shortages, a

24   state-wide lockdown, or inclement weather) warranted a change in program. A review of the log

25   books further indicates that Plaintiff was afforded approximately forty-five hours of exercise

26   time, including seventeen hours of outdoor exercise, between January 1 and January 26, 2005.

27       15.   I further understand from the Attorney General's Office that Plaintiff alleges that he

28   was not afforded the same amount of exercise time as those inmates housed within the general

Decl. Evans Supp. Def.'s Mot. Summ. J.                                      Padilla v. Evans
                                                                            C 06-1725 JF

4

1 population. According to prison records, in January 2005, and today, Plaintiff is housed in a

2 sensitive needs yard. A sensitive needs yard is designed to provide a place where inmates can

3 work, attend educational programs, participate in physical recreation, attend religious activities,

4 receive medical treatment, have visits, participate in leisure time activities, and establish a

5 general population program while committed to the custody of the California Department of

6 Corrections and Rehabilitation. Sensitive needs yard housing on Facility A is a housing unit

7 designed for inmates that need a safe environment due to their inability to safely program in a

8 traditional general population setting. Sensitive needs yard inmates are generally comprised of

9 inmates who are drop outs of prison gangs or disruptive groups, are victims or targets for assault

10 because of their commitment offense or their age, or have enemy concerns. Sensitive needs yard

11 inmates, regardless of the reason for their placement on a sensitive needs yard, are all afforded

12 the same amount of exercise time as each other. And as stated above, the yard/day room rotation

13 implemented in Plaintiff's housing unit was equally implemented on the other three housing

14 facilities at SVSP at the time.

15     I swear under penalty of perjury that the forgoing is true and correct to the best of my

16 recollection. Executed at Soledad, California on May 1, 2008.

17

18     M. S. Evans

19     Warden
    Salinas Valley State Prison

20

21

22

23

24

25

26

27

28

Decl. Evans Supp. Def.'s Mot. Summ. J.

Padilla v. Evans
C 06-1725 JF

5