NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY DEAN PADILLA,<br><br>    Plaintiff,<br><br>  vs.<br><br>M. S. EVANS, et al.,<br><br>    Defendants. | No. C 06-01725 JF (PR)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>(Docket No. 102) |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendant Warden M. S. Evans of Salinas Valley State Prison ("SVSP").[1] Plaintiff filed a first amended complaint which the Court found stated cognizable Eighth Amendment and Equal Protection claims for the deprivation of outdoor exercise. Defendant filed a motion to dismiss for failure to exhaust, which the Court partially granted, finding Plaintiff had exhausted his claims for the denial of outdoor exercise for the period from January 1, 2005 until January 26, 2005, and dismissing all claims arising thereafter. (See Docket No. 94.) Defendant Evans filed a motion for

---

[1] This case was reassigned from the Honorable Martin J. Jenkins to this Court on April 8, 2008.

summary judgment on May 2, 2008, on the grounds that (1) Defendant did not violate Plaintiff's Eighth Amendment and Equal Protections rights, and (2) Defendant is entitled to qualified immunity.  Plaintiff filed opposition to Defendant's summary judgment motion, and Defendant filed a reply.  After reviewing the first amended complaint and all submitted papers, the Court concludes that Defendant is entitled to summary judgment and will GRANT Defendant's motion.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary

judgment may be granted.  See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  See id. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party.  See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## II.     Legal Claims and Analysis

### A.     Eighth Amendment

Plaintiff claims that from January 1, 2005 until January 26, 2005, Defendant "deliberately deprived [Plaintiff] of minimum outside exercise," violating his rights under the Eighth Amendment.  (Am. Compl. at 3.)  Plaintiff claims that the denial of outdoor exercise was not "related to any behavior of a true perceived threat" and that it has resulted in "great physical and emotional hardship."  (Id.)

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 ( 1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer, 511 U. S. at 832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S. at 297).

Exercise is one of the basic human necessities protected by the Eighth Amendment.  See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Toussaint v. Rushen, 553 F. Supp. 1365, 1380 (N.D. Cal. 1983), aff'd in part and vacated in part, 722 F.2d 1490 (9th Cir. 1984).  Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well-being" of prisoners. See Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  Prison officials therefore may not deprive prisoners of regular exercise. See Toussaint v. McCarthy, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984).  Although the Ninth Circuit did not specify the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held that ninety minutes per week of exercise, which is the equivalent of slightly less than thirteen minutes a day, does not comport with Eighth Amendment standards.  Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th. Cir. 2008).

The following facts are not in dispute.  While incarcerated at SVSP, Plaintiff was housed in Facility "A", Building 3, Cell 202 during January 2005.  Facility "A" is one of

four housing facilities at SVSP, the others being B, C, and D.  (Def.'s Mot. at 5.)   Facility "A" is made up of five buildings, *i.e.*, Buildings 1-5, each housing approximately 200 inmates.  During the time at issue, some inmates living in Facility A were housed in the Facility's gym.  (Id.)  Within each building, there are two tiers, *i.e.*, a story or level, housing approximately 100 inmates on each tier.  Each tier in Buildings 1-5 contain approximately 25 cells designed to house two inmates in each cell.

Facility "A" is a "sensitive needs" yard, which is designed for inmates that need a safe environment because of their inability to program safely in a traditional general population setting.  (Def.'s Mot. at 6.)  Plaintiff is a "sensitive needs" inmate.[2]  Each housing facility, including Facility "A," has at least one recreation yard which is an outdoor area comprised of a large grass field approximately 100 yards long surrounding by a dirt jogging track.  (Id.)  Each yard has a basketball court and an area with parallel bars where inmates can do resistance exercises, e.g., pull-ups, chin-ups and bar dips.  (Id.) Facility "A," as with each housing facility, has a day room located within each building, which is comprised of a large common area where inmates can watch television, use the telephone, play cards and socialize.  (Id.)  Although aerobic exercise is not permitted in the day room, inmates are free to walk around and sometimes allowed to do low impact exercise such as push ups.  (Id.)

According to Defendant, from January 1, 2005 to January 26, 2005, and currently, SVPS is operating on a rotational recreation schedule (yard/day room rotation) due to prison overcrowding and staff shortages.  In his declaration in support of the motion for summary judgment, Defendant Evans details the implementation of the rotation schedule:

> Under the yard/day room rotation inmates are afforded the opportunity to exercise on the prison yard every other day based on a building and tier rotation. Accordingly, with respect to inmates housed in Facilities A and B, on odd days Buildings 1, 3, and 5 are released to the recreational yard and on even days Buildings 2 and 4 are released to the recreational yard.

---

[2] Among the inmates designated as "sensitive needs" inmates are those who dropped out of a prison gang or other disruptive group, who are victims or targets for assault because of their commitment offense or their age, or who have enemy concerns. (Def.s' Mot. at 6.)

> During the time period alleged in Plaintiff's Amended Complaint, unmates housed in the gym were also released to the recreation yard on even days. Under the yard/day room rotation, each facility provides two separate yard releases, which alternate based on a tier rotation. Thus, on the day that a particular building is scheduled for yard release, inmates housed within that building will have the opportunity to attend yard either in the morning or in the afternoon depending on their tier assignment. For example, inmates housed on the upper tier of Building 1would be allowed to go to yard on January 1, 2008 in the morning, while inmates housed on the lower tier of Building 1 would be allowed to go to the yard in the afternoon that day.... During the times one tier in a building is out to yard in Facilities A and B, the other tier is afforded the opportunity to use the building's day room.
>
> ...
>
> Under the yard/day room rotation in Facilities A and B, on the days a building is not scheduled for yard release, inmates housed within that building are still afforded the opportunity to use the day room for either two hours in the morning or for two hours in the morning or for hours in the afternoon, depending on their tier rotation. Moreover, inmates also are always afforded the opportunity to do low impact exercise within their cells such as knee bends, jumping jacks, sit-ups, and push-ups.

(Evans Decl. at 2-4) (Docket No. 104).

In accordance with this schedule, Defendant contends that Plaintiff was afforded the opportunity to exercise out of his cell for forty five hours during the period at issue, including seventeen hours of outdoor exercise. (Def.'s Mot. at 11.) Relying on his own personal log, Plaintiff admits that he was afforded over twenty-six hours of exercise, including over nine and a half hours of outdoor exercise during this time. (Am. Compl., Ex. A.) By his own admission, Plaintiff was not deprived of outdoor exercise for an extended period of time. Rather, Plaintiff contends that the amount of exercise he was afforded during the twenty-six days at issue was constitutionally insufficient. However, viewing the facts in the light most favorable to Plaintiff, there is an absence of a genuine issue of material fact, *i.e.*, that Plaintiff was not afforded any exercise for an extended period of time or that the amount of exercise he received was constitutionally deficient under the relevant case law. While it is clear that "long-term" deprivation of outdoor exercise to prisoners is unconstitutional, the amount of deprivation which Plaintiff suffered does not appear to be so "long-term" so as to raise constitutional concerns. See LeMaire, 12 F.3d at 1458; see, e.g., Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc) (denial of outdoor exercise for 6-1/2 weeks meets the objective prong of

Eighth Amendment deliberate indifference claim); Keenan, 83 F.3d at 1089-90 (plaintiff's undisputed claim of denial of outdoor exercise for six months while in segregation sufficient to proceed to trial); Allen v. Sakai, 48 F.3d 1082, 1087-88 (9th Cir. 1994) (deprivation of outdoor exercise for six weeks to prisoners in indefinite segregation enough to state 8th Amendment claim), cert. denied, 514 U.S. 1065 (1995); Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (denial of outdoor exercise to prisoners assigned to administrative segregation for over one year raised "substantial constitutional question"); Spain, 600 F.2d at 199-200 (complete deprivation of outdoor exercise for four years to prisoners in continuous segregation violated 8th Amendment). Even the deprivation of outdoor exercise for four weeks and where plaintiff was able to exercise in his cell was not enough to state an Eighth Amendment claim. See May v. Baldwin, 895 F. Supp. 1398, 1406-07 (D. Or. 1995). Furthermore, the average of seven hours per week which Plaintiff was afforded was certainly more than the one hour and a half per week which the Ninth Circuit found deficient in Pierce. See 526 F.3d at 1212. Accordingly, the twenty-six hours of exercise which Plaintiff was afforded during the twenty-six day period was not objectively, sufficiently serious to state an Eighth Amendment claim.

The subjective component of an Eighth Amendment violation requires a prison official to demonstrate deliberate indifference to an inmates' health or safety needs. See Farmer, 511 U.S. at 834. The analysis proceeds based on the individual facts of each case. McCarthy, 597 F. Supp. At 1412 (citing Yockey, 722 F.2d at 1493). Viewing the facts in the light most favorable to Plaintiff and upon comparing Plaintiff's deprivation of outdoor exercise while in the "special needs yard" at SVSP, the Court finds that Defendant was not deliberately indifferent to Plaintiff's health or safety needs in implementing the rotational recreation schedule. Cf. Sakai, 48 F.3d at 1088; Spain, 600 F.2d at 199.

Deprivation of outdoor exercise is not a per se violation of the Eighth Amendment; whether it is a violation depends on the specific facts of the deprivation. See Spain, 600 F.2d at 199. In Sakai, the court found an Eighth Amendment violation based on a

deprivation of outdoor exercise for only six weeks. 48 F.3d at 1087-88. However, the Ninth Circuit has also found that deprivation of out-of-cell exercise privileges for most of a five-year incarceration period does not satisfy the subjective requirement. See LeMaire, 12 F.3d 1444 (finding that loss of outdoor exercise privileges was a result of plaintiff inmate's misconduct and failure to follow prison rules). Thus, in the instant case, a loss of outdoor exercise intermittently during a twenty-six days period does not automatically prove that Defendant was deliberately indifferent to Plaintiff's health and safety needs.

      The record contains insufficient evidence that Defendant had the requisite mental state. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See Farmer, 511 U.S. at 837. Plaintiff asserts that because of the allegedly deficient outdoor exercise, he suffered "great physical and emotional hardship." (Am. Compl. at 3.) However, Plaintiff has provided no evidence to substantiate this claim of physical or emotional suffering or that Defendant was aware of his suffering and deliberately ignored it. Plaintiff's reference to the testimony of the psychiatrist in LaMaire as proof of the harms that lack of exercise can cause prisoners is insufficient to show that Plaintiff himself actually suffered such harm. (Oppo. at 2-3.) Defendant contends that the rotational recreation schedule was implemented because of prison overcrowding and staff shortages, and that the schedule was followed "unless institutional lockdowns, modified programs, adverse weather conditions or other emergencies or operational necessities warrant[s] a change in the program." (Evans Decl. at 3.) Plaintiff offers no evidence to show that Defendant knew that implementing the rotational recreation schedule would cause a substantial risk of serious harm to Plaintiff, and yet disregarded that risk.

      In Sakai, defendants knew of the goal to provide prisoners in the special holding unit five hours of exercise a week and knowingly failed to provide that outdoor time to plaintiff. Id. at 1088. Here, it is uncontested that Plaintiff had on average of an hour a day outside his cell. As a "sensitive needs" inmate, Plaintiff had opportunities to work, attend educational programs and religious activities, participate in physical recreation and

leisure time, and have visiting privileges. (Det.'s Mot. at 11.) In contrast, the plaintiff in Sakai was confined to his cell nearly twenty-four hours a day, with only forty-five minutes per week of outdoor time. See id. at 1087. In addition, the plaintiff in Sakai was confined under "harsh" conditions. Id. at 1088 ("[ Plaintiff's] incarceration at SHU was indefinite and therefore potentially long-term, and under admittedly 'harsh' conditions.") In the instant case, Plaintiff makes no assertion that his condition of confinement was otherwise "harsh." One way in which the deprivation in Sakai was "harsh" was because it was indefinite, and therefore potentially long-term. Id. at 1088. Here, in contrast, Plaintiff was placed in the "sensitive needs" yard for his own safety, and was otherwise provided with all of the same opportunities as inmates in general population.

Having reviewed the pleadings and all submitted papers on this matter, the Court finds that Plaintiff's allegations do not establish that Defendant provided constitutionally deficient opportunities to exercise or that Defendant was deliberately indifferent to Plaintiff's health or safety needs. See Farmer, 511 U.S. at 837. Accordingly, Plaintiff's Eighth Amendment argument fails as a matter of law and summary judgment is GRANTED to Defendant on Plaintiff's Eighth Amendment claims.

### B. Equal Protection

Plaintiff also claims that Defendant violated his right to equal protection by depriving him as a "sensitive needs inmate" the same access to the yard as inmates housed in general population. (Am. Compl. at 7.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious

1  discrimination, federal courts should defer to judgment of prison officials); Timm v.
2  Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same).  Here, to establish that Defendant
3  violated Plaintiff's right to equal protection by failing to provide him with the same
4  amount of exercise time as other inmates, Plaintiff must show that Defendant
5  intentionally discriminated against him based on his classification as a "sensitive needs"
6  inmate.  See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).  In addition, the
7  claim must be rejected if, as is the case here, the prison regulation or practice claimed to
8  have infringed on an inmate's constitutional rights is "reasonably related to legitimate
9  penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987); see also Washington v.
10 Harper, 494 U.S. 210, 223-25 (1990) (standard of review adopted in Turner applies in all
11 circumstances in which needs of prison administration implicate constitutional rights,
12 including when the constitutional right claimed to have been infringed is fundamental or a
13 suspect class is involved).

14         Defendant is entitled to summary judgment on Plaintiff's equal protection claim
15 because Plaintiff has not "set forth specific facts showing that there is a genuine issue for
16 trial."  Fed. R. Civ. P. 56(e).  Assuming that "sensitive needs" inmates are a suspect class,
17 Plaintiff fails to show that Defendant acted with an invidious intent to discriminate
18 against "sensitive needs" inmates when Defendant implemented the rotational recreation
19 schedule, or that the schedule was not reasonably related to a legitimate penological
20 interest.  Plaintiff's conclusory allegations of discriminatory intent and general
21 second-guessing of Defendant's rotational recreation schedule are not sufficient to show
22 invidious discrimination.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).
23 Further, the undisputed facts in the record make clear that the rotational recreational
24 schedule was carried out on account of prison overcrowding and staffing shortages.
25 Accordingly, even if the schedule infringed on Plaintiff's constitutional rights, it was
26 reasonably related to legitimate penological interests.  See Turner, 482 U.S. at 89.
27 Defendants are entitled to judgment on this claim as a matter of law.  See Celotex Corp.
28 v. Cattrett, 477 U.S. 317, 323 (1986).

**CONCLUSION**

For the foregoing reasons, Defendant Evans' motion for summary judgment (Docket No. 102) is GRANTED.

This order terminates Docket No. 102.

IT IS SO ORDERED.

DATED: __3/23/09_____        _____
                                  JEREMY FOGEL
                                  United States District Judge

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.JF\CR.06\Padilla01725_grant-msj.wpd           11